UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| US Awami League, Inc.,<br><br>   Plaintiff,<br><br>  v.<br><br>City of Chicago,<br><br>   Defendant. | Case No. 15 C 1753<br><br>Judge John Robert Blakey |

**MEMORANDUM OPINION AND ORDER**

This action for declaratory judgment concerns Defendant City of Chicago's decision to erect a street sign honoring President Ziaur Rahman, a former ruler of Bangladesh. Plaintiff filed a one-count Complaint alleging that the sign violated the Supremacy Clause in Article VI of the Constitution because it interfered with the exclusive federal power to conduct foreign affairs. [1]. Now before the Court is Defendant's motion to dismiss for lack of standing under Rule 12(b)(1), and for failure to state a claim under Rule 12(b)(6). [6]. That motion is granted.

**I. Background[1]**

On September 6, 1984, the Chicago City Council passed an Ordinance authorizing the posting of honorary street signs ("the Ordinance"). [1] at ¶ 7. Under the Ordinance, City aldermen may submit requests to erect honorary street signs in their wards. *Id.* at ¶ 8. Each request must then be approved by the

---

[1] The Background section is based upon the well-pleaded factual allegations of the complaint and the related documents properly before this Court. The facts are accepted as true solely for the purpose of this motion.

1

Commissioner of Public Works and the City Council before the sign is erected. *Id*. at ¶¶ 8, 10. On September 14, 2014, City Council approved a street sign honoring Ziaur Rahman at the 6700 block of North Clark Street in Chicago, Illinois. *Id*. at ¶ 10. That action was taken pursuant to the Ordinance.

On February 26, 2015, Plaintiff filed its Complaint in this matter. *Id*. Plaintiff is a not-for-profit corporation organized and existing under the laws of New Jersey. *Id*. at ¶ 2. It is a branch of the Bangladesh Awami League, the controlling and ruling party of Bangladesh. *Id*. at ¶ 3. It appears that Ziaur Rahman was associated with a different political party, the Bangladesh Nationalist Party.

In the Complaint, Plaintiff appears to allege both facial and "as applied" challenges to the constitutionality of the Ordinance. Yet the apparent thrust of the Complaint is an "as applied" challenge: that the erection of the Ziaur Rahman sign violated the Supremacy Clause because it interfered with the exclusive federal power to conduct foreign affairs. [1] at ¶ 18. In support, Plaintiff alleges that the United States has recognized the government of Bangladesh, and that the sign is "politically offensive to the country of Bangladesh and would embarrass the United States in terms of its dealings with that country." *Id*. at ¶¶ 11, 16.

According to Plaintiff, the sign is offensive because Ziaur Rahman: (1) was a military dictator who opposed democracy and liberalism; (2) toppled the democratic government of Bangladesh; (3) murdered the founding father of Bangladesh and 18 family members; and (4) suspended the constitution and human rights.[2]

---

[2] As set forth herein, all the well-plead facts are accepted as true, and thus, the merits of these allegations are not part of the relevant analysis.

2

While not the focus of Plaintiff's Complaint, it appears that there is also a facial challenge to the constitutionality of the Ordinance. In just one paragraph of its Complaint, and without further support relating to a facial challenge, Plaintiff alleges that the "ordinance gives the City an opportunity to make targeted political statements contrary to the position of the United States government which has exclusive power over foreign affairs and, therefore, violates Article VI of the United States Constitution." *Id*. at ¶ 18.

## II. Legal Standard

Under both 12(b)(1) and 12(b)(6), the Court must construe the Complaint in the light most favorable to Plaintiff, accept as true all well-pleaded facts and draw all reasonable inferences in its favor. *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013); *Long v. Shorebank Dev't Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). Statements of law, however, need not be accepted true. *Yeftich*, 722 F.3d at 915.

For a Rule 12(b)(1) motion, Plaintiff bears the burden of establishing that the jurisdictional requirements have been met. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 589 (7th Cir. 2014). If the jurisdictional facts are challenged, Plaintiff must support those facts by competent proof. *Thomson v. Gaskill*, 315 U.S. 442, 446 (1942). The standard for a Rule 12(b)(1) motion differs from that under Rule 12(b)(6) only in that the court "may properly look beyond the jurisdictional allegations of the [claim] and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009).

To survive Defendant's motion under Rule 12(b)(6), the Complaint must "state a claim to relief that is plausible on its face." *Yeftich*, 722 F.3d at 915. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Rule 12(b)(6) limits this Court's consideration to "allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

III. Analysis

    A. Standing

Plaintiff does not have standing here because it has not shown that it sustained a concrete and particularized injury.[3] Article III of the Constitution limits the judicial power of federal courts to "cases" and "controversies." U.S. Const. Art. III § 2. To plead a case or controversy, the plaintiff must demonstrate standing by alleging "that he suffered an injury in fact, the defendant's actions caused the injury, and the remedy he seeks would redress his injury." *Bell v. Keating*, 697 F.3d 445, 451 (7th Cir. 2012). Regarding the injury in fact requirement, Plaintiff must show that it sustained a *direct* injury, as opposed to an abstract injury. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983).

---

[3] Because Plaintiff does not claim that it is in immediate danger of injury, the Court will confine its analysis to whether Plaintiff has shown that it actually did sustain an injury as a result of the Ordinance.

Here, it is unclear how exactly the Plaintiff was injured by the Ordinance or the installation of the Ziaur Rahman street sign. Drawing all inferences in its favor, Plaintiff – at best – alleges two injuries: (1) that it was injured by the City's violation of the Supremacy Clause, and (2) that the sign was "offensive to the country of Bangladesh" and embarrassing to the "United States in terms of its dealings with that country." [1] at ¶ 11, 18. Neither potential injury is sufficient to permit the Plaintiff standing here.

First, with regard to the City's alleged violation of the Supremacy Clause, that supposed injury is merely an abstract injury shared by all citizens in general. The Supreme Court has held that "the abstract injury in nonobservance of the Constitution asserted by . . . citizens" in general does not constitute an "injury in fact." *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 482 (1982) (citation omitted). Courts routinely reject claims due to lack of standing where those claims are predicated on "the right possessed by every citizen, to require that the Government be administered according to law." *Id.* at 482-83 (citations omitted). Thus, to the extent Plaintiff claims an injury based solely on the City's alleged constitutional violation, without asserting any concrete injury that it has sustained personally, it does not have Article III standing based on that alleged injury.

With regard to the second alleged injury, it too is insufficient to allow standing. As a preliminary matter, Plaintiff may not claim injury to another (*i.e.*, embarrassment to the United States) as its basis for standing. According to the

5

Seventh Circuit, "[n]o one has standing to object to a statute that imposes duties on strangers," instead "it takes an invasion of one's own rights to create standing." *Freedom From Religion Found., Inc. v. Obama*, 641 F.3d 803, 805-6 (7th Cir. 2011); *see also Swanson v. City of Chetek*, 719 F.3d 780, 783 (7th Cir. 2013) ("A party generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties"). As such, the sole possible injury that Plaintiff might claim here is that the sign was offensive to Bangladesh.

Offense at government activity, however, is not a sufficiently direct or concrete injury to create standing.[4] According to the Seventh Circuit, "offense at the behavior of the government and a desire to have public officials comply with (plaintiffs' view of) the Constitution, differs from a legal injury. The psychological consequence presumably produced by observation of conduct with which one disagrees is not an injury for the purpose of standing." *Freedom From Religion*, 641 F.3d at 808.

In *Freedom From Religion*, the plaintiffs claimed that legislation creating a national day of prayer was in violation of the establishment clause. *Id*. at 805. The statute at issue ordered that the President issue a proclamation designating the first Thursday in May as a day in which people "may turn to God in prayer." *Id*. Plaintiffs' claimed injury was their feeling – as atheists – of being excluded or slighted by the President's yearly proclamation. *Id*. at 806-7. The Court found this

---

[4] Because the alleged injury here is abstract and therefore insufficient, the Court need not address any potential problem with Plaintiff claiming to enforce the rights of what appears to be a third party – the government of Bangladesh. While Plaintiff claims to be a branch of the ruling party of that government, it has provided no authority suggesting that such an arrangement entitles the Plaintiff to act on behalf of the government of Bangladesh for purposes of Article III standing.

6

insufficient to create standing. It said that "the value interests of concerned bystanders . . . do not support standing to sue," and that "offense at the behavior of government . . . differs from legal injury." *Id*. at 807; *see also Clay v. Fort Wayne Cmty. Sch.*, 76 F.3d 873, 879 (7th Cir. 1996) ("nothing suggests that the Appellants suffered anything other than indignation: personal offense from the knowledge that unconstitutional conduct is occurring. Indignation is not an injury-in-fact sufficient to confer standing").

In light of the holdings in *Freedom From Religion* and *Clay*, Plaintiff's injury claims do not create standing. Based on the information before it, the Court cannot imagine any way in which the erection of the sign, or the Ordinance allowing that erection, has injured the Plaintiff in a manner sufficient to pursue this litigation. As such, Plaintiff has failed to satisfy its burden and Defendant's motion to dismiss for lack of standing is granted.

## B.  Failure to State a Claim

Even if Plaintiff had standing, this Court nonetheless would dismiss the Complaint for failure to state a claim. Plaintiff has alleged no well-pleaded facts that support a plausible claim that the Ordinance, or the erection of the Ziaur Rahman sign under the Ordinance, violate the Supremacy Clause. As noted, it is unclear from the Complaint whether the Plaintiff is challenging the Ordinance facially or as applied. While the thrust of the Complaint is that the erection of the sign was an unconstitutional application of the Ordinance, there is language suggesting a facial challenge as well. Because this Court finds the Ordinance valid

7

on an as applied basis, however, it need not specifically address the apparent facial challenge.[5]

Under the Supremacy Clause, the Constitution and acts of Congress preempt state law. Art. VI, cl. 2. State law therefore must yield to federal law where: (1) an express provision for preemption is included in federal law; (2) federal law was intended to occupy the relevant field; or (3) state law conflicts with federal law. *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000). Here, Plaintiff does not claim that there is federal law expressly preempting the Ordinance or that there is a conflict between the Ordinance and some specific federal law. Instead, Plaintiff appears to argue that federal power was intended to occupy the field of foreign affairs and the erection of the sign improperly interferes with that power. [1] at ¶ 11. Under that rubric, a state law that interferes with foreign affairs may be unconstitutional if it "may disturb foreign relations." *Zschernig v. Miller*, 389 U.S. 429, 441 (1968). A state law, however, with no more than an "incidental or indirect effect in foreign countries" will be valid. *Id.* at 434-35.

While courts do not address this issue often, a brief review of those that have is useful. In *Zschernig*, the Supreme Court struck down an Oregon law that barred non-resident aliens from inheriting property unless certain conditions were met regarding inheritance in the alien's home country, permitted U.S. citizens to receive

---

[5] "A facial challenge to the constitutionality of a law can succeed only where plaintiffs can establish that no set of circumstances exists under which the Act would be valid." *Fields v. Smith*, 653 F.3d 550, 557 (7th Cir. 2011). Because the Court finds the Ordinance valid under the circumstances in which it was applied in this case, it also then finds that the act is facially valid. *Bhalerao v. Illinois Dep't of Fin. & Prof'l Regulations*, No. 11-CV-7558, 2012 WL 5560887, at *3 (N.D. Ill. Nov. 15, 2012) ("once the statute is determined to be valid as applied to Plaintiff, a facial challenge must fail").

payments from estates in the foreign country, and allowed foreign heirs to receive the proceeds of Oregon estates without confiscation by their home government. *Id*. at 430-31. The Court found that the law was "an intrusion by the State into the field of foreign affairs" because it required that Oregon judges determine "where 'rights' protected by foreign law are the same 'rights' that citizens of Oregon enjoy." *Id*. at 440-41. According to the Court, that analysis inevitably resulted in the withholding of inheritances to citizens of communist countries. *Id*. In the course of its analysis, the *Zschernig* court distinguished an earlier decision regarding California law and noted that state laws with only "some incidental or indirect effect in foreign countries" do not intrude on the federal domain. *Id*. at 432-33.

Beyond the Supreme Court, several Circuits – but not the Seventh Circuit – have addressed the application of the "incidental effect" test. In *Movsesian v. Victoria Versicherung AG*, 670 F.3d 1067 (9th Cir. 2012), for example, the Ninth Circuit held that a California statute vesting state courts with jurisdiction over insurance actions by "Armenian Genocide" victims and extending the statute of limitations for victims' claims intruded on the federal government's exclusive power to conduct foreign affairs. *Id*. at 1076-77. It found that the act at issue had "more than some incidental or indirect effect" on foreign affairs because it established "a particular foreign policy for California – one that decrie[d] the actions of the Ottoman Empire and [sought] to provide redress for 'Armenian Genocide victims' by subjecting foreign insurance companies to lawsuits in California." *Id*. at 1076.

9

The Third Circuit reached the opposite result in *Trojan Technologies, Inc. v. Com. of Pa.*, 916 F.2d 903 (3d Cir. 1990). There, the Court found that the Pennsylvania Steel Products Procurement Act did not have an "incidental or indirect effect in foreign countries." *Id.* at 913. The act required that suppliers contracting with a public agency in connection with a public works project provide only products whose steel was American-made. *Id.* at 904. The Court said, "while it is possible that sub-national government procurement restrictions may become a topic of intense international scrutiny, and a target in international trade negotiations, that possibility alone cannot justify this court's invalidation of the Commonwealth's statute." *Id.* at 913. Instead, the Court found that the act was not preempted because: (1) it did not provide opportunity for state officials to key their decisions to the nature of foreign regimes; and (2) its bar on the use of foreign steel was not applied according to the foreign policy attitudes of state officials in order to limit countries perceived as "foes." *Id.*

From this guidance, the Court concludes that the erection of the Ziaur Rahman street sign had less than an "incidental or indirect effect" in Bangladesh. Courts have found preemption where the disputed state law had a far greater foreign effect than does the Ordinance. The erection of the sign here, under the Ordinance, did not limit probate rights (or any rights) of foreign citizens, *Zschernig*, 389 U.S. at 441, it did not require state officials to analyze foreign laws, *id.*, and it did not provide relief to a perceived class of foreign victims. *Movsesian*, 670 F.3d at 1077. In fact, putting up the sign had far less of a foreign effect than the steel act

10

that was found constitutional by the Third Circuit in *Trojan Technologies*. There, an act that disallowed and punished the use of foreign steel, and had the potential to become a topic of intense international scrutiny or a target in international trade negotiations, was deemed constitutional. *Trojan Technologies*, 916 F.2d at 904-13. The application of the Ordinance has far less of an effect on foreign affairs than any of the three laws described above. The Court thus agrees with the Defendant's argument that the effect of this sign abroad, if any, remains *de minimis*.

Plaintiff's argument against this finding is unavailing. Plaintiff attempts to rely on a series of documents related to a proposed Ziaur Rahman parade in Chicago. That argument fails for two reasons: (1) information regarding the parade is not on the face of the complaint, and the exhibits containing the relevant information are not properly before the Court, *Curran*, 714 F.3d at 436; and (2) the documents regarding the cancelation of the parade do not show that it was canceled for foreign policy reasons. Plaintiff has failed to state a claim for relief under Rule 12(b)(6).

## IV. Conclusion

Defendant's motion to dismiss [6] is granted. Plaintiff's complaint is dismissed without prejudice.

IT IS SO ORDERED

Dated: June 22, 2015

                                              Judge John Robert Blakey
                                              United States District Court